IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIUS A. H., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   No. 21 C 4216 |
| | ) |
| KILOLO KIJAKAZI, Acting | )   Magistrate Judge Finnegan |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Plaintiff Julius A. H. seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the Commissioner's decision should be reversed or remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court finds that the case must be remanded for further proceedings.

## BACKGROUND

Plaintiff protectively applied for DIB and SSI on June 21, 2019, alleging in both applications that he became disabled on May 12, 2018, due to congestive heart failure, high blood pressure, post-traumatic stress disorder ("PTSD"), and sleep apnea.[1] (R. 280-

---

[1] Plaintiff is not appealing the denial of his prior application for benefits for the period from February 5, 2016 through March 28, 2019. (R. 133-42).

83, 298). Born in 1989, Plaintiff was 28 years old as of the alleged disability onset date, making him at all times a younger person (under age 50). (R. 280); 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c). He lives in a house with his mother and father and has a high school diploma. (R. 67, 299). Between 2007 and 2017, Plaintiff held a variety of jobs with multiple employers, including cart pusher/stocker, cook, and factory worker. In October 2017, he was hired by Amazon where he served as an order picker, supervisor, and stock person. (R. 62, 299, 334). Plaintiff quit his job in May 2018 because Amazon would not agree to his request for a reduction in the length of his shifts. (R. 299).

The Social Security Administration denied Plaintiff's applications initially on November 8, 2019, and again upon reconsideration on April 20, 2020. (R. 147-212). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Bill Laskaris (the "ALJ") on November 18, 2020.[2] (R. 55). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Sara Gibson (the "VE"). (R. 57-90). On December 23, 2020, the ALJ found that Plaintiff's congestive heart failure, hypertension, obstructive sleep apnea, asthma, chronic kidney disease, obesity, degenerative joint disease of the right knee, major depressive disorder, PTSD, and substance abuse disorder are severe impairments, but that they do not alone or in combination meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 35-39).

After reviewing the evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with numerous exertional and non-exertional limitations. (R. 39-45). The ALJ accepted the VE's testimony that a person

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

with Plaintiff's background and this RFC could not perform Plaintiff's past relevant work, but could perform a significant number of other jobs available in the national economy, including Document Preparer, Inspector, and Pneumatic Tube Operator. (R. 45-47). As a result, the ALJ concluded that Plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. (R. 47-48). The Appeals Council denied Plaintiff's request for review on June 4, 2021. (R. 1-5). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. §§ 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, Plaintiff argues that the ALJ: (1) erred in rejecting the opinion from his treating internist Teresa Ostapowicz, M.D., regarding his physical functioning; (2) made a flawed RFC determination that does not account for all of his limitations; and (3) failed to properly assess his subjective statements.[3] For reasons discussed in this opinion, the Court finds that the case must be remanded for further consideration of Dr. Ostapowicz's opinion.

## DISCUSSION

**A.    Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[4] 20

---

[3]    In his opening brief, Plaintiff also asserted a constitutional challenge to the ALJ's decision but withdrew the argument in his reply brief. (Doc. 18, at 16).
[4]    Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will uphold the ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and build[s] an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

**B.     Analysis**

    **1.     Dr. Ostapowicz's Opinion**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that the opinion from his internist Dr. Ostapowicz was unpersuasive.

4

Since Plaintiff filed his claims in June 2019, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 404.1520c(a). *See also* Social Security Administration, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819 (Jan. 18, 2017). Instead, the ALJ was required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

On May 17, 2019, Dr. Ostapowicz completed a Cardiac Residual Functional Capacity Questionnaire stating that as a result of his congestive heart failure, Plaintiff experiences chest pain, shortness of breath, fatigue, weakness, dizziness, and sweatiness. (R. 737). He would frequently experience cardiac symptoms severe enough to interfere with attention and concentration needed to perform even simple work, and he

5

has marked limitation of physical activity even if comfortable at rest. (*Id.*). According to Dr. Ostapowicz, Plaintiff can: walk only one block without rest or severe pain; sit for one hour at a time and for a total of four hours in an 8-hour workday; stand for 30 minutes at a time; stand and walk for about two hours in an 8-hour workday; frequently lift and carry less than 10 pounds; occasionally lift and carry 10 pounds; rarely lift and carry 20 pounds; and never lift and carry 50 pounds. (R. 737-38). In addition, Plaintiff must shift positions at will, and he needs to take unscheduled breaks every 20 minutes for 5-10 minutes. (R. 738). Though he does not need to elevate his legs with prolonged sitting, he is likely to have "good days" and "bad days" and be absent from work four days per month. (*Id.*).

The ALJ found Dr. Ostapowicz's opinion unpersuasive because the limitations are inconsistent with the treatment notes of record. (R. 43). The ALJ acknowledged that Plaintiff was diagnosed with New York Heart Association ("NYHA") Class 3 heart failure and hypertension (R. 40), which represents "[m]arked limitation in activity due to symptoms, even during less-than-ordinary activity, e.g., walking short distances . . . Comfortable only at rest." https://manual.jointcommission.org/releases/TJC2018A/DataElem0439.html#:~:text=Class%20III%20%2D%20Marked%20limitation%20in,Class%20IV%20%2D%20Severe%20limitations, perma.cc, ____ (2023). The ALJ nonetheless found that any disabling symptoms are controlled with medication. (R. 40, 43).

In reaching this conclusion, the ALJ cited: (1) reports from August 9 to 11, 2018 reflecting that Plaintiff had been hospitalized with chest pain and shortness of breath likely secondary to uncontrolled hypertension but improved with IV Lasix (a diuretic) (R. 443-48); (2) a May 17, 2019 note from Dr. Ostapowicz indicating that Plaintiff's congestive

6

heart failure and hypertension were both "[m]edically managed" (R. 675); (3) a note showing that Plaintiff had been hospitalized from February 27 to March 2, 2020 following another exacerbation of his symptoms but he improved with IV Lasix (R. 775); and (4) an April 3, 2020 note from cardiologist Mohammed Khan, M.D., indicating that Plaintiff had been symptom free for several weeks following the hospitalization. (R. 929). Plaintiff argues that the ALJ improperly overlooked other medical findings that arguably support Dr. Ostapowicz's opinion. The Court agrees.

The record reflects that Plaintiff had a prominent S2 on heart exams, complained of dyspnea, experienced swelling in the lower extremities, and suffered from orthopnea and paroxysmal nocturnal dyspnea, all conditions that the ALJ never mentioned. (R. 544, 615, 675, 680, 698, 702, 707, 733, 759, 790, 897, 934, 942, 946, 951). The ALJ also said nothing about an August 2018 chest CT scan showing mild cardiomegaly (R. 486); an August 2018 chest x-ray showing mild pulmonary vascular and interstitial prominence, cardiac silhouette enlargement, small left pleural effusion without frank pulmonary edema present, and submaximal inflation (R. 446); or a February 27, 2020 chest x-ray showing cardiomegaly and mild pulmonary edema. (R. 830). Though ALJs "need not address every piece of evidence in the record, . . . an ALJ may not ignore an entire line of evidence contrary to h[is] ruling." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (internal citations omitted). Here, it is not clear from the ALJ's rather limited analysis that he fairly considered all of the pertinent medical records. Nor did he adequately explain why those records are inconsistent with Dr. Ostapowicz's findings.

There is also a concern that the ALJ improperly played doctor by concluding that "diagnostic testing does not show a decline in [Plaintiff's] condition over time." (R. 41).

7

In support, the ALJ noted that echocardiograms from March 2018 and June 2019 showed ejection fractions of 42% and 41.28%, respectively. (R. 41, 560, 562, 748). Yet no physician of record indicated that this was a mark of stability, and Plaintiff's ejection fraction in August 2018 was only 33%. (R. 473). *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("[A]n ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."). Contrary to the Commissioner's assertion, moreover, doctors characterized the ejection fraction as moderately and not merely mildly reduced. (R. 748, 876). And the ALJ failed to mention additional abnormalities in the echocardiograms, such as moderately increased left ventricle wall thickness, severe concentric hypertrophy, hypertrophic cardiomyopathy, moderate asymmetric left ventricular hypertrophy, and diastolic dysfunction with abnormal relaxation. (R. 560, 748).

The Commissioner insists that the ALJ's failure to discuss the above records is inconsequential, but relies only on her own interpretation of the medical evidence as support. For example, the Commissioner claims that prominent S2 heart sounds "generally means nothing more than Plaintiff had symptomatic hypertension." (Doc. 17, at 9) (citing S2 Heart Sound Topic Review, Healio: Learn the Heart, https://www.healio.com/cardiology/learn-the-heart/cardiology-review/topic-reviews/s2-heart-sound; http://perma.cc/ESH3-WAD6). The cited reference, however, is not so clear on that point, and there is no medical opinion in the record that explains the significance of the finding. (http://perma.cc/ESH3-WAD6) (stating only that "[i]In severe hypertension, a loud S2 may be prolonged and slurred — falsely mimicking a split S2."). The Commissioner also contends that Plaintiff's dyspnea resolved when he was taking his

8

medications as prescribed, and that his orthopnea and paroxysmal nocturnal dyspnea would not affect his ability to work because they are conditions that occur at night and he does not use a CPAP machine. (Doc. 17, at 9-10). These arguments are unpersuasive because they appear nowhere in the ALJ's decision and are not drawn from the medical record. *See Nanet R. v. Kijakazi*, No. 20 C 3304, 2023 WL 3479181, at *3 n.4 (N.D. Ill. May 16, 2023) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943)) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace.").

The ALJ next discounted Dr. Ostapowicz's opinion because it was inconsistent with the results of an October 11, 2019 Internal Medicine Consultative Examination with Mark Stephen Travis, M.D. (R. 43). As the ALJ explained, Dr. Travis documented full range of motion and 5/5 strength in the upper and lower extremities, a normal gait, and an ability to squat, tandem walk, and heel-toe walk. (R. 43, 760-61). Plaintiff fairly questions why these findings are more probative of his functioning than the evidence the ALJ ignored, including dyspnea, edema, prominent S2 heart sounds, and abnormal diagnostic testing results. (Doc. 11, at 5-6; Doc. 18, at 7). *See Elise P. v. Kijakazi*, No. 2:22-CV-261-JPH-MJD, 2023 WL 3407944, at *7 (S.D. Ind. May 12, 2023) (remand required where the ALJ discounted treating physician's opinion based on inconsistency with the results of a consultative exam but in doing so "ignore[d] the many medical records that show various abnormalities."). The Commissioner notes that Dr. Travis also saw no edema and documented clear lungs and normal heart sounds on the day of the exam. (R. 760-61). Again, the ALJ did not address those findings or rely on them in rejecting Dr. Ostapowicz's assessment. *Nanet R.*, 2023 WL 3479181, at *3 n.4.

9

The ALJ similarly failed to adequately explain why Dr. Ostapowicz's opinion conflicted with Plaintiff's own statements during treatment. The ALJ relied heavily on a July 6, 2018, note from cardiologist Christopher Gans, M.D., indicating that Plaintiff reported no leg edema unless he stood for more than four hours, could walk half a mile without issue, and had good exercise tolerance. (R. 43, 615, 623). But the record reflects that Plaintiff required hospitalization the following month in August 2018, and on May 17, 2019, he reported being able to walk only one block without fatigue, or seven blocks with intermittent rest. (R. 674). In addition, Plaintiff presented with edema on several occasions after July 6, 2018, making the ALJ's contrary assertion factually incorrect. (R. 43-44, 675, 680, 684). The Commissioner defends the ALJ's decision by claiming that Plaintiff reported exercising regularly and playing basketball in August 2018. (Doc. 17, at 8). The report was actually from February 2018, however, before the May 2018 alleged disability onset date and before Plaintiff was hospitalized on February 28 and August 9, 2018. (R. 443, 582, 979).

There is finally no merit to the Commissioner's suggestion that Plaintiff may not actually suffer from NYHA Class 3 congestive heart failure. (Doc. 17, at 10). This argument is based on the theory that no cardiologist ever assessed the condition after January 2016. But cardiologist Dr. Khan diagnosed Plaintiff with Class 3 congestive heart failure on August 7, 2019, September 5, 2019, and April 3, 2020, and that diagnosis arguably supports Dr. Ostapowicz's assessment of Plaintiff's functional limitations. (R. 930, 946, 951).

Viewing the record as a whole, the ALJ did not build an accurate and logical bridge between the evidence and his decision to reject Dr. Ostapowicz's opinion. *See, e.g.,*

10

*Lemuel W. v. Kijakazi*, No. 22 C 4448, 2023 WL 2333249, at *2 (N.D. Ill. Mar. 2, 2023). The case must be remanded for further consideration of this issue.

### 2. Remaining Arguments

The Court does not find any specific error with respect to Plaintiff's remaining arguments. However, the ALJ should take the opportunity on remand to explain why he found the opinions from the psychological consultants persuasive but did not adopt their restriction to one- to two-step tasks as an accommodation for Plaintiff's moderate limitations in concentration, persistence, or pace. The ALJ should also confirm that if such a restriction is proper, there are a significant number of jobs available to someone with Plaintiff's background and mental RFC.

### CONCLUSION

For reasons stated above, Plaintiff's request to remand the case is granted, and the Commissioner's Motion for Summary Judgment [16] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

ENTER:

Dated: December 8, 2023

_____
SHEILA FINNEGAN
United States Magistrate Judge